## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **HUNTER STEWART and NEHEMIAH BROWN, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs** | **Civil Action No.** |
| **v.** | |
| **UNIVERSITY OF MAINE and THE UNIVERSITY OF MAINE SYSTEM,** | **CLASS ACTION COMPLAINT** |
| **Defendants,** | **JURY TRIAL DEMANDED** |

Plaintiffs HUNTER STEWART and NEHEMIAH BROWN ("Plaintiffs"), by and through the undersigned counsel, bring this class action against Defendant UNIVERSITY OF MAINE, located in Orono, Maine ("UM," the "University,") and Defendant THE UNIVERSITY OF MAINE SYSTEM ("Maine System," along with the University collectively "Defendants"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend UM and other universities within the Maine System ("Universities")[1] for an in person, hands-on educational services and experiences for the semesters or terms affected by

---

[1] The Maine System includes the University of Maine, University of Maine at Augusta, University of Maine at Farmington, University of Maine at Fort Kent, University of Maine at Machias; University of Maine at Presque Isle, and the University of Southern Maine.

Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 term or semester, and had their course work moved to online only learning.

2.     Such individuals, including the Plaintiffs, paid all or part of the tuition for an average semester that was approximately $4,800.00 for in-state undergraduate students and mandatory fees, including the "Unified Fee" of $1,031 per semester, a student activity fee of $41.83 per semester, a recreation center fee of $146, and others associated with services the University agreed to provide ("Mandatory Fees").

3.     Under the direction and supervision of the Maine System, students at other Universities similarly paid tuition at different required rates and paid Mandatory Fees.

4.      UM and the Universities within the Maine System have not refunded any amount of the tuition or any of the Mandatory Fees, even though it has implemented online distance learning starting on March 23, 2020.

5.     Because of the Universities' response to the COVID-19 pandemic, on or about March 23, 2020, the Universities stopped providing the services or facilities the Mandatory Fees were intended to cover.

6.     According to a Public Release on March 11, 2020: "The University of Maine System will transition all of its in class academic programming to distance modalities when classes resume March 23 following spring break.  The universities will also be notifying on-campus residential students to make plans to depart campus by Sunday, March 22, with personal and educational belongings necessary to complete their semester requirements remotely."

7.     The Universities uniformly responded to COVID-19 under the direction, policies, and control of the Maine System.

8.      The Universities' failure to provide the services, for which tuition and the

Mandatory Fees were intended to cover since approximately March 23, 2020, is a breach of the contracts and breach of the covenant of good faith and fair dealing between the Universities and Plaintiffs and the members of the Class and is unjust.

9.      In short, Plaintiffs and the members of the Class have paid for tuition for a first-rate education and an on-campus, in-person educational experiences, and all the benefits offered by a first-rate university.

10.     Instead of receiving such benefits, Plaintiffs were provided a materially deficient and insufficient alternative, and those alternatives constitute a breach of the contracts entered into by Plaintiffs and the Class with the Universities.

11.     As to the Mandatory Fees, Plaintiffs and the Class have paid fees for services and facilities which are simply not being provided. This failure also constitutes a breach of the contracts entered into by Plaintiffs and the Class with the Universities.

12.     The Mandatory Fees charged by the University include an activity fee, a recreation fee, and a unified fee.

13.     The University has promoted and marketed that these Mandatory Fees are associated with specific services that the University provides. For example, the University represents that:

     a.   "[A]ctivity fee funds are used by the Student Government association to support various activities."[2]

     b.   The Recreation Center Fee includes among other things "access to the Student Recreation and Fitness Center and The Maine Bound Adventure Center. This fee also includes unlimited Level 1 adult group exercise classes, Intramural Sports

---

[2] https://umaine.edu/bursar/tuition-and-fees/university-fees/

and Sport Club participation. Also included are reduced program fees for specialty fitness programs, Maine Bound Trips and courses, equipment rental, and other programs."[3]

c.  The Unified Fee is charged for the purpose of replacing "individual course and lab fees… covers fixed costs of providing educational and student services not directly related to course instruction. The areas supported included, but not limited to student services…, the operation of facilities such as the student centers, and student-utilized, instruction-related technologies."[4]

14.  Plaintiffs and the Class have been deprived of access to these facilities and services as a result of Defendants' response to the Coronavirus.

15.  Plaintiffs seek, for themselves and Class members, the Universities' disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the Universities closed and switched to online only learning.

16.  Plaintiffs seek for themselves and Class members protections including injunctive and declaratory relief protecting Class Members for paying the full cost of tuition and fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendants can actually safely provide.

17.  Defendants are obligated to uphold the Maine and United States Constitution.

18.  By denying in-person learning and on-campus benefits and opportunities, Defendants have violated the Maine Constitution, Article I, § 6-A and Article I, § 21 and the United States Constitution's Fifth and Fourteenth Amendments.

---

[3] Id.
[4] Id.

4

19.     Plaintiffs and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of the Universities' COVID-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## **PARTIES**

20.     Plaintiff Hunter Stewart was an undergraduate student at UM during the Spring 2020 semester. UM charged Plaintiff approximately $17,586.00 in out-of-state tuition and more than $1,500 in fees, including $1,031.00 as a unified fee, $146 as a recreation fee, $41.83 as a student activity fee, and other fees for the Spring 2020 semester.  Plaintiff Hunter Stewart also enrolled during the Summer 2020 semester.

21.     Plaintiff Stewart is a resident of Chicago, Illinois.

22.     Plaintiff Stewart paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Stewart has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after the Universities' facilities were closed and events were cancelled.

23.     Plaintiff Nehemiah Brown was an undergraduate student at UM during the Spring 2020 semester while majoring in finance and management, with an expected graduation date of Spring 2022. UM charged Plaintiff approximately $4,800 in tuition and more than $1,500 in fees for the Spring 2020 semester, including a $1,030 unified fee, and a $53 student activity fee.

24.     Plaintiff Brown is a resident of Orono, Maine.

25.     Plaintiff Brown paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Brown has not been

provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after the Universities' facilities were closed and events were cancelled.

26.     Defendant UM is a public research university in Orono, Maine that was opened in 1865.  UM is the flagship university of the Maine System and is a land, sea, and space grant institution.

27.     UM has an enrollment of more than 11,000 students and it offers approximately 90 majors for undergraduate students, as well as a number of graduate programs.

28.     Defendant Maine System is a network of public universities in the state of Maine, created by the legislature in 1968, with an enrollment of more than 34,000 students.

29.     The Maine System operates and manages its member Universities, including UM, University of Maine at Augusta, University of Maine at Farmington, University of Maine at Fort Kent, University of Maine at Machias, University of Maine at Presque Isle, and the University of Southern Maine.

30.     The Maine System is operated and controlled by the Board of Trustees that consists of 16 members that are appointed by the Governor of Maine and approved by the Maine Legislature.

31.     The Universities' undergraduate and graduate programs includes students from many, if not all, of the states in the country.

32.     The flagship campus is located in Orono, Maine.

33.     Defendants are all citizens of Maine.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(d)(2)(A),

as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

35.     This court has personal jurisdiction over Defendants because Defendants maintains its principal place of business in this District.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants operate their headquarters within this district.

## FACTUAL ALLEGATIONS.

37.     Plaintiffs and Class Members attended UM and the Universities during the Spring 2020 semester by paying tuition and the Mandatory Fees.  The Spring 2020 semester started on January 21, 2020 and were scheduled to end on or around May 1, 2020.

38.     Tuition at the UM for the Spring 2020 semester was approximately $4,800 for in-state undergraduate students, and between $17,586.00 for out-of-state undergraduate students. Fees at UM for the Spring 2020 semester included a "Unified Fee" of $1,031, a student activity fee of $41.83, a recreation center fee of $146, and various other fees associated with services that UM provided.

39.     Upon information and belief, a similar payment structure was utilized for Universities and students under the control of Defendants within the Maine System including the payment of tuition and Mandatory Fees.

40.     Plaintiffs and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

41.     Plaintiffs and UM entered into a contractual agreement where Plaintiffs would

provide payment in the form of tuition and fees and Defendants, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

42.     The terms of the contractual agreement were set forth in publications from the Universities, including UM's website and marketing materials, the application for admission submitted by Plaintiffs and Class Members, and the acceptance letters received by Plaintiffs and Class Members.

43.     Under the direction of the Board of Trustees and the Maine System, Plaintiffs and putative class members entered into similar, if not the same exact, agreements as set forth in these materials with the Universities.

44.     Prior to Plaintiffs' enrollment, the Universities highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiffs' educational experiences.

45.     Plaintiffs made payments to the Universities based on promises made by UM in those documents in lieu of receiving education at other universities or academic institutions.

46.     Under the direction of the Board of Trustees and the Maine System, Plaintiffs and putative class members received similar materials and documents related to the educational services being offered at the Universities.

47.     On March 11, 2020, the University announced that all in-person classes were to be moved online beginning on March 23,2020.

48.     Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiffs.

49.     The Universities did not hold any in-person classes from March 23, 2020.  All classes during that time were only been offered in a remote online format with no in-person

instruction or interaction.

50.    Many of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to Universities' health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

51.    None of the Universities, including UM, have provided reimbursement or refund information regarding tuition or the Mandatory Fees.

52.    Students attending the Universities, including UM, during the Spring 2020 semester and other semesters impacted by COVID-19 did not choose to attend an online only institution of higher learning, but instead chose to enroll in the Universities' in-person educational programs – with the understanding that the Universities would provide in person educational opportunities, services, and experiences.

53.    On its website, UM markets the University's on-campus experience and opportunities as a benefit to students.

54.    For example, the University provided students, like Plaintiffs, with materials that reflected the following on-campus services, experiences, and opportunities:









goumaine • Follow
University of Maine

goumaine With UMaine's average
student to faculty ratio being 16:1,
students have the opportunity to
create meaningful relationships with
their professors and classmates! 🐻💙
.
.
#UniversityOfMaine #UMaine
#GoBlackBears #GoBlue #Admissions
#Orono #Maine #HeartyMaineHello

255 likes
JANUARY 12

Add a comment...                              Post

55.     The Universities within the Maine system market similar on-campus experiences and opportunities as "offers," made to students.

56.     The online learning options being offered to the Universities' students are sub-par in practically every aspect as compared to what the educational experience afforded Plaintiffs and the members of the Class once was.

57.     Students within the Maine System, like Plaintiffs, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

58.     Access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

59.     Access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

60.     The Universities priced the tuition and Mandatory fees based on the in person educational services, opportunities and experiences it was providing on campus.

61.     The Maine System and the Universities have not made any refund of any portion of the tuition Plaintiffs and the members of the Class paid for the semesters affected by Covid-

11

19, and they have offered no discount, rebates, or refunds going forward.

62.     The Universities have not refunded any portion of the Mandatory Fees it collected from Plaintiffs and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

63.     Plaintiffs and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, as well as for other semesters impacted by COVID-19.

64.     Defendants' practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

65.     Prior to bringing this action, on September 14, 2020, Plaintiffs served a Notice of Claim to the Defendants including the University of Maine System and the Office of the Attorney General on behalf of themselves and the Class as defined herein pursuant to Title 14 M.R.S.A. § 8107(3).

66.     Plaintiffs fully expects Defendants to reject the claims set forth in the Notice of Claim as the University has already made its determination to not refund any tuition or Mandatory Fees. Plaintiffs note that the University website offers pro-rated refunds *only for costs associated with room and board* to students who were forced to move off campus due to COVID-19.[5]

## **CLASS ACTION ALLEGATIONS**

---

[5] https://umaine.edu/stuaid/financialaidcoronavirus/

67.     Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid tuition and/or the Mandatory Fees for a student to attend
> in-person class(es) during the Spring 2020, or any other semester affected by
> Covid-19 at the Universities within the Maine System, including UM, but had
> their class(es) moved to online only learning (the "Class").

68.     Plaintiffs reserves the right to modify or amend the definition of the proposed

Classes if necessary before this Court determines whether certification is appropriate.

69.     This action has been brought and may properly be maintained on behalf of the

Class proposed herein under the criteria of Rule 23 and other statutes and case law regarding

class action litigation.

70.     The Class is so numerous that joinder of all members is impracticable.  Although

the precise number of Class members is unknown to Plaintiffs, the Maine System reportedly has

a total of more than 34,000 undergraduate and graduate students were enrolled during 2019-2020

school year at the Universities.

71.     The names and addresses of all such students are known to the Universities and

can be identified through the Universities' records. Class members may be notified of the

pendency of this action by recognized, Court-approved notice dissemination methods, which

may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

72.     The questions here are ones of common or general interest such that there is a

well-defined community of interest among the class members.  These questions predominate

over questions that may affect only individual members of the classes because the Universities

have acted on grounds generally applicable to the classes.  Such common legal or factual

questions include, but are not limited to:

a.   Whether the Universities accepted money from Plaintiffs and the Class members

in exchange for the promise to provide an in-person and on-campus live
education, as well as certain facilities and services throughout the semesters
affected by Covid-19;

b.  Whether Defendants breached its contracts with Plaintiffs and the members of the
Class by failing to provide them with an in-person and on-campus live education
after March 23, 2020;

c.  Whether Defendants breached its contracts with Plaintiffs and the Class by failing
to provide the services and facilities to which the Mandatory Fees pertained after
mid-March 2020; and

d.  Whether Defendants complied with Constitutional requirements for seizing and
retaining private property of the Plaintiffs and the Class;

e.  Whether Defendants afforded Plaintiffs and Class members notice and due
process before seizing and retaining their property;

f.  Whether Defendants breached the covenant of good faith and fair dealing with
Plaintiffs and the members of the Class by failing to provide them with an in-
person and on-campus live education after March 23, 2020;

g.  Whether Defendants breached the covenant of good faith and fair dealing with
Plaintiffs and the members of the Class by failing to provide the services and
facilities to which the Mandatory Fees pertained after mid-March 2020;

h.  The amount of damages and other relief to be awarded to Plaintiffs and the Class
members.

73.  Plaintiffs' claims are typical of the claims of the members of the Class because
Plaintiffs and the other Class members each contracted with Defendants for it to provide an in-

person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the Universities stopped providing in mid-March.

74.     Plaintiffs are more than adequate class representative.  In particular:

a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b) because their interests do not conflict with the interests of the other Class members who they seek to represent;

c) they anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75.     Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

76.     It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the Universities.  It would,

thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

<u>**FIRST CAUSE OF ACTION**</u>
**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

77.     Plaintiffs repeats and re-alleges the factual allegations above, as if fully alleged herein.

78.     Plaintiffs bring this claim individually and on behalf of the members of the Class.

79.     In return for payment of Universities tuition and the Mandatory Fees for the Spring 2020 semesters, the Universities agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory fees they paid pertained throughout those semesters.  As a result, Plaintiffs and each member of the Class entered into a binding contract with the Universities.

80.     UM has held that its in-person educational opportunities, experiences, and services are of substantial value.

81.     UM has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

82.     UM has promoted its in-person educational services as being valuable to students'

16

educational experiences and their development.

83.     In marketing materials and other documents provided to the Named Plaintiff, Defendant UM promoted the value of the in-person education experiences, opportunities, and services that Defendant provided.

84.     Defendants "offered" these educational experiences, opportunities, and services.

85.     Defendants provided Plaintiffs with an acceptance letter that the Named Plaintiffs accepted based on the promise of in-person educational experiences, opportunities, and services that Defendants would provide.

86.     The Universities has breached its contract with Plaintiffs and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by Covid-19, yet has retained monies paid by Plaintiffs and the Class for a live in-person education and access to these services and facilities during these semesters.

87.     Plaintiffs and the members of the Class have therefore been denied the benefit of their bargain.

88.     Plaintiffs and members of the putative Class have performed all of the obligations on them pursuant to their agreement – including by making such payments or securing student loans or scholarships to pay for such education.

89.     Plaintiffs and the members of the Class have suffered damage as a direct and proximate result of the Universities' breach in the amount of the prorated portion of the tuition and Mandatory Fee they each paid during the portion of time the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by the Universities.

90.     The Universities should return such portions of the tuition and Mandatory Fee to

Plaintiffs and each Class Member.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983**
**(On Behalf of Plaintiffs and the Class)**

91.     Plaintiffs repeats and re-alleges the factual allegations above as if fully set forth herein.

92.     Plaintiffs brings this claim individually and on behalf of the members of the Class.

93.     The Takings Clause of the Fifth Amendment provides property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment. See U.S. Const. amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Thus, the Takings Clause of the U.S. Constitution prohibits states, and state agencies like the Universities, from taking private property for public use without just compensation.

94.     Takings claims may properly be brought against state agencies (such as the Universities) and are not barred by sovereign immunity.

95.     Common law has recognized that there is a property right by an owner in funds held in an account managed by another. Here, the Universities received payments of tuition and Mandatory Fees from private citizens, as consideration for the benefit of receiving in-person course instruction and other on-campus benefits – the funds are thus private in nature but held by a public entity. Plaintiffs and the members of the Class have a protected property right in all sums they paid to the Universities.

96.     Defendants violated the Takings Clause by failing to return to Plaintiffs and the

18

other members of the Class that portion of the tuition and Mandatory Fees for which they received nothing, or significantly less, than what they bargained for in return. Neither Plaintiffs nor the other Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment to be paid just compensation for the taking of their property right in those funds.

97.     Thus, Plaintiffs and the Class are entitled to just and reasonable compensation for the taking of their property.

**THIRD CAUSE OF ACTION**
**DUE PROCESS – 42 U.S.C. § 1983**
**(On Behalf of Plaintiffs and the Class)**

98.     Plaintiffs repeats and realleges the factual allegations above, as if fully alleged herein.

99.     Plaintiffs brings this claim individually and on behalf of the members of the Class.

100.    Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. amend. XIV.

101.    The due process clause of the U.S. Constitution prohibits the State of Maine and the governmental agencies that it forms, such as the Universities, from depriving citizens of a protected property interest without due process of law.

102.    Plaintiffs and the Class members had a constitutionally protected property interest in the tuition and Mandatory Fees they paid for in-person education and on-campus services and opportunities but were denied due to the COVID-19 pandemic.

103.    Defendants took action affecting Plaintiffs and the other Class members' constitutionally protected property interest by retaining amounts from Plaintiff's and the other

Class members' payment of tuition and Mandatory Fees.

104.    Defendants deprived Plaintiffs and the other Class members of their protected property interests without due process of law by, for example:

i.      Failing to provide timely notice to Plaintiffs and the other members of the Class, whose identity and contact information Defendants either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition and Mandatory Fees;

ii.     Failing to design and implement criteria by which the tuition and Mandatory Fees can be refunded to Plaintiffs and the other members of the Class in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic; and

iii.    Failing to design and implement a mechanism by which Plaintiffs and the other members of the Class can obtain a refund of the tuition in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic.

105.    Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiffs and the Class.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class)**

106.    Plaintiffs incorporates the allegations by reference as if fully set forth herein.

107.    By paying the Universities tuition and the Mandatory Fees for the Spring 2020 semester, the Universities agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout that semester.

108.    Defendants has retained the benefits of the amount of tuition and fees that Plaintiffs have provided – without providing the benefits that Plaintiffs are owed.

109.    For example, Defendants failed to provide Plaintiffs and Class Members access to

on-campus facilities after March 23, 2020. Yet Defendants assessed Plaintiffs with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

110.    Plaintiffs were not able to access such facilities or services remotely.

111.    Plaintiffs paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that UM has previously marketed, promoted, or made available prior to Covid-19.

112.    Defendants have been unjustly enriched by Plaintiff's payment of tuition and fees.

113.    Despite not being able to provide such services, UM failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees.

114.    Plaintiffs and members of the putative Classes have sustained monetary damages as a result of each of Defendants' breaches of the covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in favor of Plaintiffs and the Class against Defendants as follows:

(a)    For an order certifying the Class under Maine law and naming Plaintiffs as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of

fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by

Defendants from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and

expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts

awarded; and,

(h)     For an order awarding such other and further relief as may be just and

proper, including injunctive relief and declaratory relief.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 24, 2020

Respectfully submitted,

/s/*Stephanie G. Albert*

Stephanie G. Albert, ME Bar No. 4711
**BARNS, GREENFIELD & THORNTON**
8 Fundy Road
Falmouth, Maine 04103
salbert@bgt-law.com
(207)781-7677

*Local Counsel for Plaintiffs*

&

Jeffrey K. Brown, Esq. *(To apply Pro Hac Vice)*
Michael Tompkins, Esq. *(To apply Pro Hac Vice)*
Brett R. Cohen, Esq. *(To apply Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347

Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

Jason P. Sultzer, Esq. *(To apply Pro Hac Vice)*
Jeremy Francis, Esq. *(To apply Pro Hac Vice)*
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

*Counsel for Plaintiffs and Proposed Class*